**Administaff**

© 2005 Administaff. <u>Privacy Policy</u> :: <u>Site Map</u>

**We take care of your people. So you can take care of your business.®**

---



January 11, 2007

Dear Michael,

I'd like to share the top five strategies today's small to medium-sized financial services businesses are utilizing to get ahead of the competition and stay there:

**5. Delegate time-consuming administrative hassles** such as payroll, payroll tax filing and employee benefits management so you can focus on your core business NOT the business of 'employment'.

**4. Protect your business from liabilities** like unemployment claims, employee terminations, workers' comp claims and other risky business, by letting *Administaff* shoulder these burdens.

**3. Avoid state and federal fines** from the hundreds of agencies that govern businesses, by taking advantage of best practices human resources (HR) expertise from *Administaff*.

**2. Eliminate competition & improve productivity** by using *Administaff* to help you attract, hire and retain top talent with *Fortune 500 like* company benefits & services like healthcare, retirement planning and more. Enhance employee performance through training, compensation planning and annual reviews.

**1. Cost Containment Strategies** by taking advantage of *Administaff's* economies of scale to attain the commodity driven 'brokered' parts of the business at a price point and with the cost containment otherwise unavailable to you.

*Administaff* provides America's best small to medium-sized businesses with administrative relief, big company benefits, reduced liabilities and a systematic way to improve productivity. We serve as a full-service, all inclusive HR department, providing business owners and financial executives, like you, with a team of experienced service professionals, who deliver a comprehensive range of services.

John Johnson, president of GoldStar Trust Company and an Administaff client reports, "The information and advice provided by Administaff has been absolutely priceless. I wish we had discovered Administaff earlier. We could have saved ourselves a lot of time, hassle and definitely money."

In the next few days I will contact you to see how our services can help you exceed productivity and profitability goals. In the meantime, please enjoy the enclosed calendar and discover more about what Administaff can do for you when you invest seven minutes and watch the Administaff Advantage video.

Highest regards,

Christine Prebil

1251 Avenue of the Americas, Ste. 2300     212 626-7817
New York, NY 10020                          877 273-7760     www.administaff.com

**EXHIBIT 2**

EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY
CLAIMS-MADE

EPL ELITE FOR PEO'S

---

**I.      PREAMBLE**

THIS IS A CLAIMS-MADE POLICY IN WHICH DEFENSE COSTS ARE INCLUDED WITHIN AND THEREFORE REDUCE THE LIMITS OF INSURANCE.  READ THIS POLICY CAREFULLY.

Throughout this policy, unless the context otherwise requires, the words **you** and **your** refer to the Named Insured.  The words **we**, **us** and **our** refer to Lexington Insurance Company.

Words appearing in bold typeface in this policy have the meaning set forth in the **DEFINITIONS** section or elsewhere in this policy.

This policy covers employment-related **Wrongful Termination, Discrimination, Sexual Harassment** and **Workplace Torts** liability, all subject to the terms, definitions, conditions, limitations, exclusions and other provisions set forth in this policy or in any endorsements hereto.

**II.     INSURING AGREEMENTS**

**A.     PEO COVERAGE**

1.      Subject to all of the terms, limitations, conditions, definitions, exclusions and other provisions of this policy or in any endorsements hereto, we shall pay all **Loss Amount** that the Named Insured is legally obligated to pay because of a **PEO Claim** to which this insurance applies.  The amount we shall pay per **PEO Claim** is limited as described and endorsements hereto in Item 3A and 3B of the Declarations and in the Sections of this policy and endorsements hereto addressing LIMITS OF INSURANCE, DEFENSE, DEDUCTIBLE and OTHER INSURANCE.

2.      This **PEO COVERAGE** applies to **PEO Claims** only if:

a.      the claimant is a **Worksite Employee** of the Named Insured or a **PEO Client Company Employee**, a former **Worksite Employee** of the Named Insured or a  former **PEO Client Company Employee**, or an applicant for employment as a **Worksite Employee** with the Named Insured, or an administrative agency acting on behalf of a **Worksite Employee** or a **PEO Client Company Employee**; and

b.      the **PEO Claim** is first made during the **Policy Period**, or the **Limited Reporting Period**, or the Extended Reporting Period, if any; and

c.      the **Insured Event** first happens or commences after the inception date of the first Employment Practices Liability Insurance Policy

issued by us to the Named Insured, and prior to the expiration date of this policy.

B.    PEO CLIENT COMPANY COVERAGE

1.    Subject to all of the terms, limitations, conditions, definitions, exclusions and other provisions of this policy or in any endorsements hereto, we shall pay all **Loss Amount** that any **Insured** is legally obligated to pay because of a **PEO Client Company Claim** to which this insurance applies. The amount we shall pay per **PEO Client Company Claim** is limited as described in Item 3C of the Declarations and in the Sections of this policy and endorsements hereto addressing LIMITS OF INSURANCE, DEFENSE, DEDUCTIBLE and OTHER INSURANCE.

2.    The PEO CLIENT COMPANY COVERAGE applies to **PEO Client Company Claims** only if:

a.    the claimant is a **Worksite Employee** of the **Named Insured** or a **PEO Client Company Employee**, a former **Worksite Employee** of the **Named Insured** or a former **PEO Client Company Employee**, or an applicant for employment as a **Worksite Employee** with the **Named Insured** or an administrative agency acting on behalf of a **Worksite Employee** or **PEO Client Company Employee**; and

b.    the **PEO Client Company Claim** is first made during the **Policy Period**; or the **Limited Reporting Period** or the **Extended Reporting Period**, if any; and

c.    the **PEO Client Company** against whom the **PEO Client Company Claim** is made is an **Insured** and a party to a valid **Client Service Agreement** when the **Insured Event** occurs; and

d.    the **Insured Event** first happens or commences: 1) after the inception date of the **Client Service Agreement**, 2) after the inception date of the first **Employment Practices Liability Insurance** policy issued by us to the **Named Insured**, and 3) prior to the expiration date of this policy.

C.    DEFENSE

1.    We have the right to investigate and settle any **Claim** up to the applicable LIMITS OF INSURANCE. Such settlement shall only be made with the consent of the **Named Insured**, which consent shall not be unreasonably withheld. Upon receipt by us of notice of any **Circumstance** (pursuant to Section IX.A. herein) which is likely to give rise to a **Claim**, we also have the right to investigate and settle any such **Circumstance** (even before a **Claim** is made) up to the applicable LIMITS OF INSURANCE. Our settlement of any such **Circumstance** shall only be made with the consent of the **Named Insured**, which consent shall not be unreasonably withheld.

2.    We have the right and duty to defend any **PEO Claim** and **PEO Client Company Claim.**

3.   We have the rights and duty to defend a Non-Insured PEO Client Company Claim on behalf of both the Non-Insured PEO Client Company and the Named Insured for so long as the Named Insured is maintained as a party, but only if the Named Insured requests in writing that we provide such a defense.   In no event will we defend a Non-Insured PEO Client Company Claim unless the Non-Insured PEO Client Company Claim is premised upon the conduct of the Worksite Employee or a Client Company Employee within the scope of his or her employment with such Non-Insured PEO Client Company.  With respect to any such Non-Insured PEO Client Company Claim, we shall have no duty to pay any Loss Amount other than Defense Costs on behalf of the Non-Insured PEO Client Company.  All such Defense Costs will be treated as Defense Costs paid on behalf of the Named Insured for purposes of the Sections of this policy addressing LIMITS OF INSURANCE, DEFENSE, DEDUCTIBLES, and OTHER INSURANCE.

4.   The law firm of Proskauer Rose shall be the agreed-upon, pre-designated defense counsel ("Gatekeeper") for each and every Claim which we have the right and duty to defend.

5.   The PEO Client Company agrees that the Gatekeeper shall act as defense counsel for all PEO Client Company Claims reported under this policy.  In the event that the PEO Client Company believes a conflict of interest exists between itself and any other Insured with respect to the defense or settlement of any PEO Client Company Claim, the PEO Client Company agrees that substitute counsel shall be appointed only with our consent and the consent of the Named Insured, which consent shall not be unreasonably withheld.  For any Non-Insured PEO Client Company which accepts defense pursuant to Section II.C.3. above, the Non-Insured PEO Client Company shall agree that the Gatekeeper shall act as defense counsel for Non-Insured PEO Client Company Claims reported under this policy.

6.   The Gatekeeper shall be required to follow our attorney reporting and billing guidelines and provide status reports to the Named Insured and to our Claim Department, and, to the extent applicable, to the PEO Client Company or the Non-Insured PEO Client Company.

7.   a.   Our duty to defend any PEO Claim ends at the earliest time any of the following occurs:  the PEO Per Claim Limit applicable to any such PEO Claim (Item 3A of the Declarations) or the PEO Aggregate Policy Period Limit (Item 3B of the Declarations) has been exhausted, or the Named Insured is no longer a party to the PEO Claim.

     b.   Our duty to defend any PEO Client Company Claim ends when the PEO Client Company Sublimit (Item 3C of the Declarations) applicable to such PEO Client Company has been exhausted.

     c.   Our duty to defend any Non-Insured PEO Client Company Claim ends at the earliest time any of the following occurs:  the PEO Per Claim Limit applicable to any such Non-Insured PEO Client Company Claim (Item 3A of the Declarations) or the PEO Aggregate Policy Period Limit (Item 3B of the Declarations)

3

have been exhausted, or the Named Insured is no longer a party to the Non-Insured PEO Client Company Claim.

8.  In the event of exhaustion of any of the applicable LIMITS OF INSURANCE, we shall notify the Named Insured of all Claims we are presently defending so that any involved insureds can assume control of the defense of such Claims.

Furthermore, in the event of such exhaustion we agree to continue the defense of any such Claims during that reasonable period of time necessary for you, a PEO Client Company or a Non-Insured PEO Client Company to assume control of the defense. However, by so doing, we do not waive or surrender any of our rights, including the right to withdraw from the defense of such Claims. You and the PEO Client Company agree to promptly reimburse us for the expenses we incur in continuing to conduct the defense of any PEO Claim or PEO Client Company Claim during the transition period from the time the applicable LIMITS OF INSURANCE were exhausted until the time you have assumed such defense. You agree to promptly reimburse us for the expenses we incur in continuing to conduct the defense of any Non-Insured PEO Client Company Claim which we are defending pursuant to Section II.C.3. herein.

9.  Defense Costs are included within and therefore reduce the applicable LIMITS OF INSURANCE.

D.  OTHER BENEFITS

1.  Pre-Judgment Interest. We shall pay the entire amount of pre-judgment interest resulting from a covered Claim. However, such pre-judgment interest is included within and therefore reduces the applicable LIMITS OF INSURANCE.

2.  Post-Judgment Interest. We shall pay the entire amount of post-judgment interest, calculated upon the amount for which we are liable resulting from a covered Claim until such time as we have paid or tendered such amount.

III.  WHO IS AN INSURED

A.  Newly-Acquired or Formed Organization. Any organization that the Named Insured newly acquires or forms during the Policy Period, which at the time of acquisition or formation constitutes less than 25% of the overall total Employee count of the Named Insured, is an Insured as of the date upon which the Named Insured owns at least 50.1% of such organization, but no such organization is covered under this policy for:

1.  any Loss Amount that results from an Insured Event arising from an act or incident that happened or commenced before the Named Insured acquired or formed it; or

2.  any Loss Amount covered under Other Insurance.

4

Any newly-acquired or formed organization which at the time of acquisition or formation constitutes 25% or more of the overall total Employee count of the Named Insured is an Insured as of the date upon which the Named Insured owns at least 50.1% of such organization, but no such organization is covered for:

1.  any Loss Amount that results from an Insured Event arising from an act or incident that happened or commenced before the Named Insured acquired or formed it; or

2.  any Loss Amount covered under other insurance; or

3.  more than ninety (90) days or the remainder of the Policy Period, whichever is less, unless the Named Insured gives us written acceptance of any special terms, conditions, exclusions, or additional premium we may require.

B.  **Employee.** Your Employee is an Insured, but only with respect to the conduct of your business within the scope of his or her employment.

C.  **PEO Client Company.**

1.  A PEO Client Company added to this policy as of this policy's inception date: A PEO Client Company added to this policy as of this policy's inception date is an Insured under this policy with respect to any PEO Client Company Claim. However, such PEO Client Company is not covered for:

    a.  any Loss Amount that results from an act or incident which happened or commenced before the date on which the PEO Client Company first executed a Client Service Agreement with the Named Insured; or

    b.  any Loss Amount covered under other insurance, except to the extent that coverage is provided pursuant to Section IX.B. herein.

2.  A PEO Client Company added to this policy after this policy's inception date: If, after this policy's inception date, the Named Insured requests that a PEO Client Company be added as an Insured under this policy, if we provide a written offer to add such PEO Client Company as an Insured under this policy, if such PEO Client Company accepts of our written offer, and if we receive such acceptance prior to the expiration date of this policy, then a PEO Client Company is an Insured under this policy as of the first day of the first month following our receipt of such acceptance. However, such PEO Client Company is not covered for:

    a.  any Loss Amount resulting from an act or incident that happened or commenced before the effective date of such Client Service Agreement was entered; or

    b.  any Loss Amount covered under any other insurance.

The premium for any PEO Client Company added to this policy after its inception date shall be pro-rated from the date of coverage subject to a

minimum premium. Such premium shall be fully earned at inception of the coverage.

    D.    **Owner of a PEO Client Company.** An Owner of a PEO Client Company is an Insured, but only with respect to the conduct of the PEO Client Company's business within the scope of his or her employment.

    E.    **Worksite Employee.** A Worksite Employee is an Insured, but only with respect to the conduct of the PEO Client Company's business within the scope of his or her employment.

## IV.    EXCLUSIONS

    A.    **Workers' Compensation.** This policy does not cover any Loss Amount under any workers' compensation, disability benefits or unemployment compensation law, or any similar law; however, this exclusion shall not apply to any claim of retaliation under any workers' compensation or similar law.

    B.    **Contractual Liability.** This policy does not cover any Loss Amount other than Defense Costs which the Named Insured is obligated to pay by reason of the assumption of another's liability in any contract or agreement; however, this exclusion shall not apply to Loss Amount which the Named Insured is obligated to pay on behalf of a PEO Client Company with respect to a PEO Client Company Claim by reason of a Client Service Agreement, or to liability for damages because of an Insured Event that the Insured would have had even in the absence of a contract or agreement.

    C.    **Employee Retirement Income Security Act.** This policy does not cover any Loss Amount imposed upon an Insured under the Employee Retirement Income Security Act of 1974, Public Law 93-406, or any amendments thereto; however, this exclusion shall not apply to any claim under Section 510 of ERISA, or to any claim of retaliation or other adverse action for exercising rights under ERISA.

    D.    **Strikes and Lockouts.** This policy does not cover any Loss Amount arising out of or associated with a lockout, strike, picket line, replacement or other similar actions in connection with labor disputes or labor negotiations; however, this exclusion shall not apply to any Claim brought by any Employee alleging Wrongful Termination or retaliation as a result of strike activity or union involvement.

    E.    **W.A.R.N. Act.** This policy does not cover any Loss Amount arising out of the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), or any amendment thereto, or any similar federal, state or local law.

    F.    **Building or Property Modification.** This policy does not cover any Loss Amount incurred by an Insured to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person; however, this exclusion shall not apply to Defense Costs resulting from a Claim seeking such relief.

    G.    **Breach Or Severing Of A Client Service Agreement.** This policy does not cover any Loss Amount that an Insured is legally obligated to pay because of an actual or alleged breach or severing of a Client Service Agreement.

6

V.    LIMITS OF INSURANCE

A.    **PEO Per Claim Limit.** The amount shown as the PEO Per Claim Limit in Item 3A of the Declarations is the most we shall pay under this policy for any PEO Claim or Non-Insured PEO Client Company Claim.

B.    **PEO Aggregate Policy Period Limit.** The amount shown as the PEO Aggregate Policy Period Limit in Item 3B of the Declarations is the most we shall pay under this policy for all PEO Claims or Non-Insured PEO Client Company Claims first made during the Policy Period, and the Limited Reporting Period and the Extended Reporting Period, if any.

C.    **PEO Client Company Claims Sublimit.** The amount shown for each PEO Client Company in Item 3C of the Declarations or by endorsement as the PEO Client Company Claims Sublimit is the most we shall pay under this policy for PEO Client Company Claims made against each such PEO Client Company, regardless of the number of PEO Client Company Claims made against each such PEO Client Company, the number of claimants, or the number of Insureds against whom such PEO Client Company Claims are made.

Where a PEO Client Company Claim:

1.  names both the Named Insured and a PEO Client Company as defendants; and

2.  both the Named Insured and the PEO Client Company may be jointly and severally liable for any Loss Amount; and

3.  the PEO Client Company Claims Sublimit is insufficient to indemnify the PEO Client Company for its apportioned share of the Loss Amount

then this policy shall pay no more than the PEO Client Company Claims Sublimit for Loss Amount apportioned to the PEO Client Company. The amount of liability apportioned to the PEO Client Company shall be based upon trial findings or, if no such findings are made, shall be apportioned 50% to the PEO Client Company and 50% to the Named Insured. Regardless of any such apportionment, this policy shall not pay: (1) on behalf of any PEO Client Company, more than the respective PEO Client Company Claims Sublimit (2) on behalf of the Named Insured, more than its PEO Per Claim Limit. However, in the event that the amount of liability apportioned to the PEO Client Company under this paragraph exceeds the PEO Client Company Claims Sublimit, then, at the written request of the Named Insured, we will pay an additional Loss Amount, if needed to satisfy the amount of liability apportioned to the PEO Client Company, not to exceed the dollar amount stated in the Declarations as the PEO Client Company Sublimit (Item 3C). Such payment shall be subject to all conditions of this policy, including Other Insurance, and will decrease the LIMITS OF INSURANCE applicable to the Named Insured (Items 3A and 3B of the Declarations).

VI.    DEFINITIONS

A.    **Claim** means a written demand or notice seeking monetary or non-monetary relief because of an Insured Event. Claim includes a civil action, an

administrative proceeding or an alternative dispute resolution proceeding. **Claim** does not include labor or grievance arbitration subject to a collective bargaining agreement.

A **Claim** shall be deemed to be first made on the earlier of:

1.  the date the **Named Insured's Supervisory Employee**, risk management, human resources, or corporate legal office first receives notice of a **Claim** being made against any **Insured**; or

2.  the date a **PEO Client Company** receives notice of a **PEO Client Company Claim**; or

3.  the date we settle a **Circumstance** pursuant to Section II.C.1.

All **Claims** (regardless of whether such **Claims** involve one or more claimants or **Insureds**) arising out of the same acts or incidents or related acts or incidents shall be considered a single **Claim** first made in the earliest policy period in which any one such claim is deemed first made subject to A.1. and A.2. above. If such **Claims** are made while this policy is in effect and also while predecessor or successor policies issued by us are in effect, all such **Claims** shall be considered to have been made at the time the first of such **Claims** is made and only the policy in effect at that time shall apply to all such **Claims** for all purposes, including but not limited to Section VII. (DEDUCTIBLE) and Section V. (LIMITS OF INSURANCE). The phrase "related acts or incidents" means those acts or incidents which are causally connected by common origin, purpose or effect.

B.  **Client Service Agreement** means a written contract or agreement between the **Named Insured** and a **PEO Client Company** pursuant to which the **Named Insured** assumes the administrative responsibilities of a **PEO Client Company** for payroll, benefits, and other human resources functions on behalf of all or a portion of the **PEO Client Company** workforce.

C.  **Defense Costs** means those reasonable and necessary expenses that result from the investigation, settlement, and/or defense of a **Claim**, including attorney fees and expenses, the cost of legal, administrative, or alternative dispute resolution proceedings, the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the applicable **LIMITS OF INSURANCE** (we have no obligation to apply for or furnish such bonds)); all reasonable expenses that any **Insured** incurs at our request while helping us investigate or defend a **Claim**; and, subject to Section II.C. of this policy, all costs taxed against any **Insured** in a suit.

Salaries and expenses of any **Insured's Employee** are not covered **Defense Costs**.

D.  **Discrimination** means termination of an employment relationship or a demotion or a failure or refusal to hire or promote or otherwise to take any action or omission against any individual with respect to his or her compensation, terms, conditions, privileges or opportunities of employment because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation or other protected category or characteristic established pursuant to any applicable United States federal, state or local statute or ordinance.

8

E.   **Employee** means an individual whose labor or service is engaged by an **Insured**. This includes part-time, seasonal and temporary **Employees** as well as any individual employed in a supervisory or managerial position or any person alleging an employment relationship with an **Insured** including **Worksite Employees**.

F.   **Insured Event** means (1) your current or former **Worksite Employee**, or **Owner** or an applicant for employment with **you** or any administrative agency acting on their behalf, alleging **Discrimination** by an **Insured** or **Owner**, or (2) your current or former **Worksite Employee**, or **Owner** or any administrative agency acting on their behalf, alleging **Sexual Harassment** by an **Insured** or **Owner** ; or (3) your current or former **Worksite Employee**, or **Owner** or any administrative agency acting on their behalf, alleging **Wrongful Termination** by an **Insured** or **Owner**; or (4) your current or former **Worksite Employee** or, or **Owner** or an applicant for employment with **you** or any administrative agency acting on their behalf, alleging **Workplace Torts** by an **Insured** or **Owner**. Alleging means lodging an oral or written complaint or charge with the Named **Insured's** management or **Supervisory Employee(s)** or with **Named Insured's** corporate legal or human resource office.

G.   **Loss Amount** means all forms of compensatory damages, monetary damages, statutory damages, multiplied damages, punitive or exemplary damages, judgments, settlements, statutory attorney fees, and **Defense Costs** on account of a **Claim**.

**Loss Amount** does not include criminal fines or penalties.

**Loss Amount** also does not include payment of pension, health and welfare, or insurance benefits claimed by or on behalf of any retired **Worksite Employee**, or insurance plan benefits that a claimant allegedly would have been entitled to as an **Worksite Employee** had the **Insured** provided the claimant with a continuation of insurance.

**Loss Amount** also does not include amounts awarded pursuant to a labor or grievance arbitration pursuant to a collective bargaining agreement.

It is agreed that the law of the jurisdiction most favorable to the insurability of punitive or exemplary damages shall control for the purpose of resolving any issue or dispute regarding whether such damages are insurable under this policy.

H.   **Named Insured** means the entity shown in Item 1 of the Declarations; any entity in which **you** own a 50.1% or greater interest at the time of Inception Date of this policy and **your Employees**.

I.   **Non-Insured PEO Client Company** means a PEO Client Company which does not qualify as an **Insured** under this policy.

J.   **Non-Insured PEO Client Company Claim** means a **Claim** against both the **Named Insured** and a **Non-Insured PEO Client Company**.

K.   **Owner** means a person who holds the ownership interest or the majority ownership interest in a PEO Client Company, so long as he or she is not a **Worksite Employee**.

9

L.    PEO means Professional Employer Organization.

M.    PEO Claim means any Claim against the Named Insured, including a PEO Client Company Claim against the Named Insured.

N.    PEO Client Company means the worksite employer of your provided Worksite Employee who may or may not have been a former Employee of the worksite employer, but only to the extent that the worksite employer has a Client Service Agreement with you that defines the responsibilities of the worksite employer in the employer relationship, which includes supervision over the work product or direction of Worksite Employees.

O.    PEO Client Company Claim means a Claim made by your Worksite Employee and/ or by an Owner against the Named Insured, and/or a PEO Client Company and/or a Worksite Employee. PEO Client Company Claim shall not include any Claim based upon or involving a Temporary Help Employee.

P.    Policy Period means the period of time commencing with the inception date shown in Item 2 of the Declarations and the earlier of the date shown in Item 2 of the Declarations or the date on which this policy is cancelled pursuant to Section IX.F.

Q.    Sexual Harassment means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that: (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance or creates an intimidating, hostile, or offensive work environment.

R.    Supervisory Employee means an officer or director of the Named Insured or any Employee of the Named Insured who has the authority to employ or terminate the employment of other Employees of the Named Insured or has the authority to direct the work of the Employees of the Named Insured.

S.    Temporary Help Employee means a worker hired by you and provided to a Temporary Help Firm Client Company under an agreement with a Temporary Help Firm Client Company to meet, support or supplement the worksite employer's workforce in work situations such as employee absences, temporary skill shortages, seasonal workloads, and special assignment or projects.

T.    Workplace Torts means retaliation, defamation, infliction of emotional distress, invasion of privacy, negligent evaluation, wrongful discipline, wrongful reference, failure to grant tenure, negligent hiring, negligent supervision, negligent retention, employment-related misrepresentation, wrongful failure to employ or promote, wrongful deprivation of career opportunity, or wrongful demotion.

U.    Worksite Employee means an applicant for employment or a person who has been hired by you to work for purposes of servicing any PEO Client Company pursuant to a Client Service Agreement and who works or applies for work subject to said Client Service Agreement for said PEO Client Company.

V.    Wrongful Termination means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment. Wrongful Termination includes, but is not

10

limited to, breach of an implied employment contract, retaliation, or the filing of a Claim under federal, state, local or foreign "whistleblower" laws. Wrongful Termination does not include damages determined to be owing solely under an express contract of employment or an express obligation to make payments in the event of the termination of employment.

## VII.   DEDUCTIBLE

A.   Our obligation to pay under this policy applies only to the Loss Amount in excess of the deductible amount stated in Item 3C of the Declarations. The deductible applies separately to each Claim.

B.   The Named Insured must reimburse us promptly for any Loss Amount we have paid which is within the deductible.

## VIII.   LIMITED AND EXTENDED REPORTING PERIODS

A.   What the Limited Reporting Period means: Limited Reporting Period means the sixty- (60-) day period starting at the end of the Policy Period. Any Claim first made during the Limited Reporting Period on account of an Insured Event which happened or commenced after the inception date of the first Employment Practices Liability Insurance Policy issued by us to the Named Insured on account of an act or incident which happened or commenced prior to or on the last day of the Policy Period shall be deemed to have been made on the last day of the Policy Period.

B.   When the Limited Reporting Period applies: The Limited Reporting Period shall apply only if this insurance is cancelled pursuant to Section IX.F. or not renewed by the Named Insured or by us for any reason other than your non-payment of a premium or deductible or noncompliance with the terms and conditions of this policy. An increase in premium or other changes in the terms and conditions of this coverage shall not constitute a non-renewal for the purpose of this provision. The Limited Reporting Period may not be cancelled.

C.   How to add an Extended Reporting Period: If the Limited Reporting Period applies, an Extended Reporting Period of three (3) years, commencing immediately after the last day of the Limited Reporting Period can be added by means of an Extended Reporting Period Endorsement and the payment of additional premium. The Extended Reporting Period Endorsement attached to this policy sets forth the terms and conditions of the Extended Reporting Period.

Any Claim which is first made during the Extended Reporting Period because of an Insured Event which happened or commenced after the inception date of the first Employment Practices Liability Insurance Policy issued by us to the Named Insured, because of an act or incident which happened or commenced prior to or on the last day of the Policy Period, shall be deemed to have been made on the last day of the Policy Period

The Extended Reporting Period Endorsement shall not be issued unless we receive a written request for it within sixty (60) days after the end of the Policy Period, nor shall it take effect unless the additional premium is paid when due. Once that additional premium is paid, the Extended Reporting Period Endorsement itself may not be cancelled and the premium shall be fully earned.

The additional premium for the Extended Reporting Period Endorsement shall not be more than 200% of the annual premium of the last Policy Period.

D.  How the LIMITS OF INSURANCE apply to the Limited and Extended Reporting Periods. The LIMITS OF INSURANCE that remain at the end of the Policy Period after payment of all Loss Amount and Defense Costs made on account of Claims made during the Policy Period are not reinstated, renewed or increased for Claims first made or brought during the Limited Reporting Period or the Extended Reporting Period. Any Claim first made or brought during the Limited Reporting Period or the Extended Reporting Period shall be deemed to have been first made on the last day of the Policy Period which ended immediately prior to the start of the Limited Reporting Period

IX.  CONDITIONS

It is a condition precedent to our obligations under this policy that the Insureds comply with all of the Conditions.

A.  DUTIES IN THE EVENT OF AN ACT, INCIDENT, INSURED EVENT OR CLAIM

1.  The Named Insured may give us written notice as soon as practicable after the Named Insured's risk management department, human resources or corporate legal department becomes aware of any act, incident or Insured Event which may give rise to a Claim covered by this policy (a "Circumstance"). Such notice shall include as much detail as possible, including, to the extent possible:

a.  the identity of the person(s) making the allegations of the act, incident or Insured Event;

b.  the identity of the Insured(s) out of whose conduct the act, incident or Insured Event allegedly arose, and any witnesses thereto;

c.  the date the act, incident or Insured Event took place;

d.  the nature of the alleged act, incident or Insured Event; and

e.  any other information or documentation pertinent to the act, incident or Insured Event.

Any act, incident or Insured Event reported pursuant to this provision that subsequently results in a Claim based upon or attributable to such act, incident or Insured Event shall be considered a Claim first made at the time such notice was given to us.

2.  If a Claim is made or suit is brought against any Insured, within sixty (60) days after the Named Insured's risk management department, human resources department or corporate legal department, or any Owner, becomes aware of such Claim, you must:

a.  immediately record the specifics of such Claim and the date received;

b.  notify us in writing;

c.  send us copies of any demands, notices, summonses or legal papers received in connection with such Claim as soon as practicable;

d.  authorize us to obtain records and other information;

e.  cooperate with us in the investigation, settlement or defense of such Claim; and

f.  assist us, upon our request, in the enforcement of any right against any person or organization, which may be liable to any Insured because of injury or damage to which this insurance may also apply. In no event shall we enforce any right against an Employee of the Named Insured unless that Employee has been adjudicated to have intentionally committed or personally acquiesced in the act or incident giving rise to an Insured Event. We reserve our rights to enforce any right against any Supervisory Employee who is not working pursuant to a Client Services Agreement executed between the Named Insured and a PEO Client Company which is an Insured.

3.  The Named Insured is responsible for enforcing compliance with Section IX.A.1. and 2. on behalf of all Insureds.

4.  All notices pursuant to this Section are to be made in writing to Lexington Insurance Company, 200 State Street, Boston, Massachusetts 02109; Attention: Supervisor of Professional Liability Claims.

B.  OTHER INSURANCE

1.  Primary Insurance - Unless expressly written to be excess over other insurance, this insurance is primary with respect to any covered Claim.

2.  Excess Insurance - When this insurance is specifically written to be excess of other insurance, we have no duty to defend any Claim that any other Insurer has a duty to defend until such time as such other insurance is exhausted by payment of Loss Amount that would, in the absence of such other insurance, be recoverable under this policy. When this policy is excess, we shall pay only that Loss Amount in excess of such other insurance and any deductible or self-insured retention in connection with such other insurance, and the deductible amount set forth in this policy.

C.  REPRESENTATIONS

By accepting this policy, all Insureds agree that:

1.  the representations made by the Named Insured and each PEO Client Company in their respective applications and declarations are accurate and complete;

Named Insured cancels, the refund shall be on the customary short rate basis. The return or tender of a return premium shall not be a condition precedent to the cancellation becoming effective at the time stated in the cancellation notice.

6.    If notice of cancellation is mailed, proof of mailing shall be sufficient proof of notice.

7.    If any controlling law requires a longer period of notice of cancellation by us, we shall comply with such controlling law.

G.    AUTOMATIC TERMINATION

1.    This policy shall automatically terminate as to a PEO Client Company upon cancellation, termination or other discontinuance of the Client Service Agreement between the Named Insured and such PEO Client Company. However, coverage shall continue under this policy for any otherwise covered PEO Client Company Claim first made prior to the date of such cancellation, termination or other discontinuance.

2.    The coverage afforded by this policy pursuant to Section II.C.3. shall automatically terminate as to a Non-Insured PEO Client Company upon cancellation, termination or other discontinuance of the Client Service Agreement between the Named Insured and such Non-Insured PEO Client Company. However, coverage shall continue under this policy for any Non-Insured PEO Client Company Claim first made prior to the date of such cancellation, termination or other discontinuance which we are defending pursuant to Section II.C.3. herein.

H.    CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded by this policy. The Named Insured shown in the Declarations is authorized by all other Insureds to negotiate changes in the terms of this policy with us, and to receive and provide all notices under this policy. This policy's terms can be amended or waived only by an endorsement to this policy issued by us.

I.    PREMIUMS

1.    The Named Insured is responsible for the payment of all premiums, and shall be the payee for any return premiums we pay.

2.    The premium for any PEO Client Company added to this policy after the inception date shall be pro-rated from the date of coverage. Such premium shall be fully earned at inception of the coverage.

J.    LEGAL ACTION AGAINST US

1.    No person or organization has a right under this policy:

    a.    to join us as a party or otherwise bring us into a suit asking for damages from any Insured; or

15

b.    to sue us on this policy unless all of its terms have been fully complied with.

2.    A person or organization may sue us to recover on an agreed settlement with the Insured, or on a final judgment against the Insured obtained after an actual trial, but we shall not be liable for any Loss Amount that is not payable under the terms of this policy or is in excess of the applicable LIMITS OF INSURANCE. An "agreed settlement" means a settlement and release of liability signed by us, the Insured, and the claimant or the claimant's legal representative.

K.    CHANGE IN CONTROL

In the event 50.1% or more of the controlling interest of the Named Insured is changed during the Policy Period, then this policy shall provide no coverage for acts or incidents which happen or commence subsequent to the completion of such change in control. From that point forward until the end of the Policy Period, such insurance as is afforded by this policy shall apply only to Claims which are based upon acts or incidents which happen or commence prior to that change in control. The Named Insured shall provide notice of any such change in control to us as soon as practicable, but in any event no later than 30 days after the effective date of said change in control.

L.    ARBITRATION

In the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) Arbitrator (hereinafter "umpire") as the sole and exclusive remedy. The party seeking arbitration of a dispute shall notify the other party, said notice including the name, address and occupation of the Arbitrator nominated by the demanding party. The other party shall, within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the Arbitrator nominated by it. The two (2) Arbitrators so selected shall, within 30 days of the appointment of the second Arbitrator, select an umpire. If the Arbitrators are unable to agree upon an umpire, each Arbitrator shall submit to the other Arbitrator a list of three (3) proposed individuals, from which list each Arbitrator shall choose one (1) individual. The names of the two (2) individuals so chosen shall be subject to a draw, whereby the individual drawn shall serve as umpire.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the umpire. Said hearings shall be held within 30 days of the selection of the umpire. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the Arbitrators. The award shall be issued within 30 days of the close of the hearings. Each party shall bear the expenses of its designated Arbitrator and shall jointly and equally share with the other the expense of the umpire and of the arbitration.

The arbitration proceeding shall take place in or in the vicinity of the address of the Named Insured stated as Item 1 the Declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

M.    SERVICE OF SUIT REGARDING POST-ARBITRATION RELIEF

It is agreed that in the event of our failure to pay any amount awarded pursuant to Section L. (ARBITRATION), we, at the request of the Insured, shall submit to the jurisdiction of a court of competent jurisdiction within the United States for purposes of enforcement of any such arbitral award, or for purposes of any action alleging fraud or gross misconduct by the Arbitrators. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process may be made upon Counsel, Legal Department, Lexington Insurance Company, 200 State Street, Boston, MA 02109, or his or her representative, and that in any suit instituted against us upon this policy, we shall abide by the final decision of such court or of an appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action instituted by or on behalf of you or any beneficiary hereunder arising out of this policy, and hereby designate the Counsel, Legal Department, Lexington Insurance Company, 200 State Street, Boston, Massachusetts 02109, as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary, but this policy shall not be valid unless also signed on the Declarations by our duly authorized representative.

_Elizabeth M. Tuck_
Secretary

Chairman of the Board and CEO

S:\Casualty\EPL-Elite\EPL-Elite Policy EPIX.doc

17

LEXINGTON INSURANCE COMPANY
200 STATE STREET
BOSTON, MASSACHUSETTS
(A Stock Insurance Company)

EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY
CLAIMS MADE

EPL ELITE FOR PEOs

POLICY NO.: 1321120
RENEWAL OF: 1052260

ITEM 1.    Named Insured:        Administaff, Inc.

           Mailing Address:      1251 Avenue of the Americas, #2300
                                 New York, NY  10020

ITEM 2.    Policy Period:        From:  04/01/02          To:    04/01/03
                                 (12:01 AM Standard Time at the address stated in Item 1)

ITEM 3.    Limits of Insurance and Deductible:

           A.  PEO Coverage

           B.  PEO Client Company coverage           See attached certificates

ITEM 4.    Premium:

           A.  PEO Coverage

           B.  PEO Client Company Coverage

_____
Authorized Representative

H:\Apps and forms\EPL Elite Dec Page.doc

INSURED'S COPY