WARNER PARTNERS, P.C.
Attorneys for Defendant Administaff Companies II, L.P.
950 3rd Avenue, 32nd fl.
New York, New York 10022-2705
(212) 593-8000
Kenneth E. Warner (KW-5524)
Lewis S. Fischbein (LF-3349)

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| A.B. WATLEY GROUP, INC. | § | |
| | § | |
| Plaintiff | § | **JUDGE SAND** |
| | § | |
| v. | § | CIVIL ACTION NO. _____ 3362 |
| | § | 07 CV |
| ADMINISTAFF COMPANIES II L.P. | § | |
| | § | |
| Defendant. | § | |

**RECEIVED APR 27 2007 U.S.D.C. S.D. N.Y. CASHIERS**

## DEFENDANT ADMINISTAFF COMPANIES II L.P.'S
## NOTICE OF REMOVAL

### A.    INTRODUCTION

Defendant Administaff Companies II, L.P. files this notice of removal under 28 U.S.C. § 1446(a).

1.    Plaintiff is A.B. Watley Group, Inc. ("A.B. Watley"). Defendant is Administaff Companies II, L.P. ("Administaff").

2.    A.B. Watley filed suit against Administaff on or about March 19, 2007, in a lawsuit styled *A.B. Watley Group, Inc. v. Administaff Companies II L.P.*, in the Supreme Court of the State of New York, County of New York, Index No. 600871/07 (the "Lawsuit").

2.    Defendant received notice of the Lawsuit on March 29, 2007, when a copy of the summons and complaint attached hereto as Exhibit "A" was delivered to its corporate offices in Kingwood, Texas. Defendant has not received service of process in this suit and the date of any

1

purported service of process is unknown.  Defendant therefore files this notice of removal within

30 days of receiving notice, as required by 28 U.S.C. 1446(b).

3.       The Lawsuit seeks alleged damages arising out of Administaff's role in providing

professional employer organization ("PEO") services to A.B. Watley during the period from

March 2003 through December 31, 2003.  Specifically, A.B. Watley contends that Administaff

breached its agreement and committed various tort and statutory violations by failing to provide

insurance coverage for various suits brought by and against former officers and employees of

A.B. Watley.  Administaff believes A.B. Watley's contentions are lacking in any factual or legal

merit, and intends to vigorously defend against those claims.

### B.       BASIS FOR REMOVAL

4.       Removal is proper because there is complete diversity between the parties, and

because Administaff is not a citizen of the State of New York.  *See* 28 U.S.C. § 1441(a) ("[A]ny

civil action brought in a State court of which the district courts of the United States have original

jurisdiction may be removed by the defendant or the defendants, to the district court of the

United States for the district and division embracing the place where such action is pending.");

28 U.S.C. § 1332(a); 28 U.S.C. § 1441(b).  Plaintiff is a corporation registered under the laws of

the State of New York, and with its principal place of business in New York.  Administaff is a

limited partnership registered in Delaware which maintains its principal place of business at

19001 Crescent Springs Drive, Kingwood, Texas  77339.  Accordingly, complete diversity exists

between the parties.

4.       Further, based on the allegations set forth in the complaint, the amount in

controversy sought by Plaintiff, exclusive of interest and costs, exceeds $75,000.  *See* Exhibit

"A" at p. 10; 28 U.S.C. § 1332(a).

5.      All pleadings, process, orders and other filings in the state court action (the Lawsuit) are attached to this notice as required by 28 U.S.C. § 1446(a).  *See generally* Exhibit "A."

6.      Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the action has been pending (the Lawsuit) is located within this district.

7.      Defendant will promptly file a copy of this notice of removal with the clerk of the court in the state where the action has been pending (the Lawsuit).

## C.    JURY DEMAND

8.      Plaintiff did not demand a jury in the state court action.

## D.    CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court remove this action (the Lawsuit) to this federal court.

Dated and Filed:  New York, New York
April 27, 2007

WARNER PARTNERS, P.C.

By:     _____
        Kenneth E. Warner (KW-5524)
        Lewis S. Fischbein (LF-3349)
        950 3rd Avenue, 32nd fl.
        New York, New York  10022-2705
        (212) 593-8000
        *Attorneys for Defendant Administaff*
        *Companies II, L.P.*

OF COUNSEL:

Barrett H. Reasoner (TBA No. 14922)
Angus J. Dodson (TBA No. 24034418)
**GIBBS & BRUNS L.L.P.**
1100 Louisiana, Suite 5300
Houston, Texas 77002
(713) 650-8805

*Attorneys for Defendant Administaff*
*Companies II, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Removal was

sent to plaintiff's attorney via facsimile and U.S. mail on the 26th day of April, 2007, as follows:

*Via Fax (973) 923-7890 and U.S Mail*
Franklin I. Ogele, Esq.
One Gateway Center, Suite 2600
Newark, NJ  07102

Kenneth E. Warner

4

# EXHIBIT A

[Print in *black* ink all areas in bold letters. This summons *must* be served with a complaint.]

Delivered

*Elwin Stuart*
Process Server

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------x

*A. B. Watley Group, Inc.*

_____
[your name(s)]                    Plaintiff(s)

- against -

*Administaff Companies II LP*

_____
[name(s) of party being sued]       Defendant(s)

-------------------------------------------------x

SUMMONS  *600871/07*

Index Number

_____

Date Index Number purchased

NEW YORK 200____
COUNTY CLERK'S OFFICE

MAR 19 2007

NOT COMPARED
WITH COPY FILED

To the Person(s) Named as Defendant(s) above:

PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff(s) at the address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: _3/19_, 200_7_
[date of summons]

NEW YORK
COUNTY CLERK'S OFFICE

MAR 19 2007

NOT COMPARED
WITH COPY FILED

_____
[sign your name]

*Franklin Ogele, Esq.*
[print your name]

*Law Offices*
*One Gateway Center Suite 2600*
*Newark NJ 07102- 973-277-423*
[your address(es), telephone number(s)]

Defendant(s) *Administaff Companies II LP*
*1251 Avenue of the Americas*
*Suite 2300*
*New York, NY 10020*
[address(es) of defendant(s)]

Venue: Plaintiff(s) designate(s) New York County as the place of trial. The basis of this designation is: [check box that applies]
□ Plaintiff(s) residence in New York County
□ Defendant(s) residence in New York County
☒ Other [See CPLR Article 5]: *Defendant and Plaintiff*

7-06

<u>Notice</u>: The nature of this action is [*briefly* describe the nature of your case against the defendant(s), such as, breach of contract, negligence]:

(1) Violation of section 349 of NY General Bus. Law
(2) Fraud, Deceipt and Concealment (3) Unjust Enrichment
Quasi Contract and Quantum Meruit, (4) Breach of
Contract (5) Breach of Fiduciary Duty (6) Accounting

The relief sought is [*briefly* describe the kind of relief you are asking for, such as, money damages of $25,000] $2,100,000.00 in damages

Should defendant(s) fail to appear herein, judgment will be entered by default for the sum of $2,100,000.00 [amount of money demanded], with interest form the date of as determined by [date from which interest on the amount demanded is claimed] court and the costs of this action.

<u>Venue:</u>

Plaintiff(s) designate New York County as the place of trial. The basis of this designation is [check box that applies]:

☐ Plaintiff(s) residence in New York County

☐ Defendant(s) residence in New York County

☒ Other [See CPLR Article 5]: Both Defendant and
Plaintiff conduct business
in NY County

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------x

A.B. WATLEY GROUP, INC.                                  Index #  *600 87 V/04*

                                                         Complaint

                                                         NEW YORK
                                                         COUNTY CLERK'S OFFICE

                    Plaintiffs

vs.                                                      MAR 19 2007

                                                         NOT COMPARED
ADMINISTAFF COMPANIES II L.P.                            WITH COPY FILED

                    Defendant

------------------------------------------------------------------x

1.       A.B. Watley Group, Inc. (the "Plaintiff") through its counsel, Franklin I. Ogele,
hereby files this lawsuit against Administaff Companies II LP ("Defendant") and avers
that Defendant concealed and deceived Plaintiff in regard to a business relationship
between the Plaintiff and the Defendant in violation of both common law and statutory
law. As used herein, the Plaintiff and the Defendant are collectively referred to as the (the
"Parties")

## Introduction and background history of the suit

2.       In order for the Court to understand the nature of the business relationship
between the Parties, this section of the complaint will lay out the history of the lawsuit
and the nature of Defendant's Services and Business Structure.

## Nature of Defendant's Services and Business Structure

3.       Defendant is a Professional Employer Agency ("PEO"). A PEO is a company that
serves as an outsourced Human Resources Department to its clients. According to
Defendant's website and advertisements, Defendant provides the following services to its
clients:

1

Employment Administrative Relief

Quality Employment Benefits

Employer Liability Management Services, and

Productivity Improvement Resources

4       In order for a client to avail itself of Defendant's services, Defendant and the client would create a co-employment relationship in which the Parties become co-employers. The co-employment relationship is solemnized through the execution of a Client Services Agreement between the Parties. The Client Services Agreement is then followed with an Employment Agreement between an Executive Officer of the client's company and the Defendant. The two agreements (i.e., the Client Services Agreement and the Employment Agreement) create the co-employment structure under which the Defendant and the client's company become co-employers of the client's employees.

5       According to Defendant's own web advertisement, the co-employment relationship works as follows:

**"The Co-Employment Relationship**

Your Company (i.e., a client) enters into an agreement with the PEO (i.e., Defendant) to establish a three-way relationship between you (i.e., the client) your employees (i.e., the client employees) and the PEO. You and the PEO become co-employers, instead of the traditional employer company/employee relationship."

6       What emerges according to Defendant's advertisement is a contractual structure that looks as follows:

2

**Co-Employment Relationship**



7       Once the client enters into a co-employment relationship with the PEO, the arrangement, according to Defendant's own advertisement:

"...... allows the PEO to provide you (i.e., the client) with employment administration relief and to transfer or share many employer liabilities via our (i.e., Defendant's) employer liabilities management services. Our PEO services allow you (i.e., the client) to systematically and strategically enhance the total quality of your (i.e., the client's) organization, which results in greater efficiency and productivity" [1]

8       The tool that Defendant uses to insure itself and its clients against potential employment related claims arising from its "employer liabilities management services" is a standard Employment Practices Liability Insurance Policy ("EPLI Policy"). Defendant

---

[1] See Exhibit 1 to this Complaint

procured the EPLI Policy from Lexington Insurance Company, an insurance company based in Boston, Massachusetts. [2]

9       The EPLI Policy essentially covers the Defendant and clients such as Plaintiff who by virtue of their co-employer relationship with the Defendant become a PEO Client Company. The EPLI Policy covers employment related Wrongful Termination, Discrimination, Sexual Harassment and Workplace Torts liability claims.

10      On or about March 2003, Plaintiff, A. B. Watley, Inc. and Defendant entered into a Client Services Agreement. On or about March 2003, the Parties entered into an Employment Agreement. The two agreements solidified the co-employer relationship. The co-employer arrangement is a classic division of labor arrangement under which Plaintiff would focus on growing its business while Defendant handles Plaintiff's human resources, payroll, and employer related liabilities matters.

11      Plaintiff kept its side of the bargain by making payments to Defendant as required under the agreement and Defendant, in turn, used the fees to among other things, pay for the EPLI coverage, which according to Defendant's own advertisements would cover the Parties as co-employers in the event of employer related liabilities.

12      On or about the summer of 2003, Plaintiff faced an avalanche of employee-related lawsuits and Plaintiff dutifully notified the Defendant.

13      On or about June 2003, Plaintiff advised Defendant of a sexual harassment claim made by an employee against Mr. John Amore, the then CEO of Watley.

14      On or about June 2003, Plaintiff advised Defendant about employment problems related to Mr. James Fellus, another employee of Watley.

---

[2] See Exhibit 2 to this Complaint

15    In response, Defendant's staff visited Plaintiff's offices on several occasions in the summer of 2003 to strategize over how to address the looming employee related matters, including the termination of Messrs Amore and Fellus.

16    On or about August 2003, Defendant delegated two of its employees, Ms. Meredith Lammins and Mr. John Sheehan, to work with Plaintiff in developing the procedures for the eventual termination of Mr. Amore.

17    On or about September 2003, Defendant, represented by Ms. Lammins, attended a meeting at the offices of Plaintiff in which the decision to terminate Mr. Amore was jointly taken.

18    At the September 2003 meeting, Defendant was given a copy of a lawsuit which Plaintiff was to file against Mr. Amore.

19    The lawsuits against Plaintiff started in 2003 and culminated in the 2006 indictment of key employees of Plaintiff.[3] The suits range from sexual harassment, whistleblower, wrongful termination and securities fraud claims. To date, Plaintiff has spent about $2,100,000.00 defending and settling the lawsuits and the bills continues.

20    Although Defendant was fully aware of the lawsuits against the Plaintiff and even participated in the decision to terminate Mr. Amore, the former CEO of Watley, Defendant never disclosed to Plaintiff that it (i.e., Defendant) carried a multi-million dollar EPLI Policy which, as part of the co-employer relationship, covered the Plaintiff.

21    Instead of disclosing the facts about the EPLI Policy to Plaintiff so that Plaintiff could avail itself of the insurance coverage, Defendant simply walked away and terminated the co-employer contract. Defendant's behavior was no different from that of a health insurance carrier which discovers that an insured had contracted a terminal

---

[3] See United States of America v. Kevin Mahaffy, Jr., Timothy J. O'Connell, David Ghysels, Jr., Robert F. Malin, Linus Nwaigwe, Michael A. Picone and Keevin H. Leonard, United States District Court of the Eastern District of New York. Cr. No. 05-613 (S-1) (ILG)

5

disease, and instead of honoring its obligation to the insured, simply terminates the health insurance policy.

22    Plaintiff became aware of the existence of the EPLI Policy when Plaintiff's employee saw an advertisement on CNN, in March 2006, in which Defendant advertised employee liability protection as one of the services it offers to clients.

23    On seeing the CNN advertisement, Plaintiff researched Defendant's website and determined that the EPLI Policy coverage was indeed part of the package that Plaintiff purchased when it entered into the co-employer contract with Defendant.

24    Plaintiff then contacted Defendant and obtained a copy of Defendant's EPLI Policy.  Subsequently, Plaintiff sought to be reimbursed for its legal bills from the EPLI Policy but was rebuffed by Defendant on the grounds that the claim was time-barred.

25    We contend that the singular act of concealing the existence of the EPLI Policy by the Defendant is fraudulent, deceptive and a violation of both common law proscriptions against fraud, omission of material fact and deceptive practices and Section 349 of New York General Business Laws.

26    We also contend that Defendant concealed the facts of the EPLI Policy because Defendant was faced with a conflict of interest dilemma. If Defendant disclosed the existence of the EPLI Policy, Plaintiff would have made a claim on the EPLI Policy and Defendant's loss experience rating (and its premium) would have gone up. Consequently, and to avoid a high loss experience rating, Defendant simply concealed the existence of the EPLI Policy, terminated the co-employer contract and walked away.

27    Furthermore, we contend that Plaintiff's claim is not time barred and if Plaintiff's claim is late, it is late because Defendant deliberately concealed, in violation of its fiduciary duty to Plaintiff, the facts of the existence of the EPLI Policy to Plaintiff.

In fact, we contend that it was precisely for contingencies similar to that faced by Plaintiff that businesses procure the coverage offered by Defendant. In everyday human endeavor, people forget things and miss deadlines. And it is precisely to fill the gap and protect business from the consequences of such human traits that Defendant is in business. The irony is that Defendant, whose core business, is to protect businesses such as Plaintiff from the contingencies of employer liability, actually concealed the facts of the protection it offered to the Plaintiff.

28    Had Defendant simply disclosed to Plaintiff the existence of the EPLI Policy, Plaintiff would have filed the claim back in 2003. Moreover, Defendant is a going business concern and continues to offer outsourced Human Resources services with EPLI coverage to itself and to its co-employers. Consequently, we contend that Defendant should reimburse Plaintiff for its legal bills and related costs and file a claim with its insurance carrier for the amount it reimbursed to Plaintiff.

**Causes of Action**

### As and For A First Cause of Action
### Violation of Section 349 of New York General Business Laws.

29    Plaintiff incorporates the facts of this complaint as outlined in paragraphs 1 through 28 above as if they are restated verbatim in this paragraph and avers as follows.

Section 349(a) of New York General Business Laws states as follows:

"(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful".

We contend that Defendant violated the New York State statute cited above when it concealed the facts of the EPLI Policy to Plaintiff.

As a result of Defendant's violation of New York State's General Business Laws, Plaintiff suffered damages in excess of $2,100,000.00.

### As and For A Second Cause of Action
### Fraud, Deceit and Concealment

30    Plaintiff incorporates the facts of this complaint as outlined in paragraphs 1 through 29 above as if they are restated verbatim in this paragraph and avers as follows:

By failing to disclose the existence of the EPLI Policy to Plaintiff (of which Plaintiff could have availed themselves) Defendant engaged in fraudulent and deceitful conduct in violation of common law. Furthermore, by concealing the existence of the EPLI Policy from Plaintiff, Defendant engaged in fraudulent concealment.

As a result of Defendant's concealment, fraudulent and deceitful conduct, Plaintiff suffered damages in excess of $2,100,000.00.

### As and For A Third Cause of Action
### Unjust Enrichment, Quasi-Contract, Quantum Meruit

31    Plaintiff incorporates the facts of this complaint as outlined in paragraphs 1 through 30 above as if they are restated verbatim in this paragraph and avers as follows:

Unjust enrichment, quasi contract, quantum meruit, restitution and constructive trust are similar and interrelated principles of law. These principles lay down the broad legal dictum that a person who has been unjustly enriched at the expense of another is required by law to make restitution.

As detailed above, and as will be proven in Court, there is absolutely no question that Defendant was unduly and unjustly enriched in the transaction. Plaintiff dutifully paid its fees so that Defendant could provide it with outsourced personnel management services, including most significantly, employer liabilities management services. However, when it came time to provide Plaintiff with the employer liabilities management services as promised, Defendant simply walked away.

8

As a result of Defendant's improper conduct, Defendant was unduly and unjustly enriched at the expense of Plaintiff which suffered damages in excess of $2,100,000.00.

### As and For A Fourth Cause of Action
### Breach of Contract

32    Plaintiff incorporates the facts of this complaint as outlined in paragraphs 1 through 31 above as if they are restated verbatim in this paragraph and avers as follows.

Defendant expressly promised to provide Plaintiff with administrative services which would lift the burden of employer liabilities on Plaintiff through Defendant's EPLI Policy. Defendant breached the contract by failing to provide the service it promised.

As a result of Defendant's breach, Plaintiff suffered damages in excess of $2,100,000.00.

### As and For A Fifth Cause of Action
### Breach of Fiduciary Duty

33    Plaintiff incorporates the facts of this complaint as outlined in paragraphs 1 through 32 above as if they are restated verbatim in this paragraph and avers as follows.

The Client Services Agreement and the Employment Agreement entered into by Defendant and Plaintiff, as detailed above in paragraphs 3 through 7 of this complaint, created a co-employer relationship between the Defendant and Plaintiff. Implicit in the co-employer relationship is a fiduciary duty that Defendant and Plaintiff owe each other.

Defendant's behavior as detailed in this complaint, including the concealment of the facts of the EPLI Policy, and the fraudulent and deceitful conduct relating to the existence of the EPLI Policy, is a clear breach of the fiduciary duty that Defendant owed to Plaintiff.

As a result of Defendant's breach, Plaintiff suffered damages in excess of $2,100,000.00.

9

### As and For A Sixth Cause of Action
### Accounting

34.    Plaintiff incorporates the facts of this complaint as outlined in paragraphs 1 through 33 above as if they are restated verbatim in this paragraph and avers as follows.

Since Defendant and Plaintiff were co-employers and since Plaintiff made payments for employer liability services to Defendant which Defendant was never provided, Defendant has a duty to account for what it did with the monies that it received from Plaintiff.

WHEREFORE, Plaintiff requests an award of damages as follows:

A.    Ordering Defendant to pay Plaintiff the sum of $2,100,000.00 on the First Cause of Action with interest determined by the Court

B.    Ordering Defendant to pay Plaintiff the sum of $2,100,000.00 on the Second Cause of Action with interest thereon from July 2003 or as determined by the Court.

C.    Ordering Defendant to pay Plaintiff the sum of $2,100,000.00 on the Third Cause of Action with interest as determined by the Court.

D.    Ordering Defendant to pay Plaintiff the sum of $2,100,000.00 on the Fourth Cause of Action with interest as determined by the Court.

E.    Ordering Defendant to pay Plaintiff the sum of $2,100,000.00 on the Fifth Cause of Action with interest as determined by the Court.

G.    Ordering Defendant to pay Plaintiff the sum of $2,100,000.00 on the Sixth Cause of Action with interest as determined by the Court.

H.    Ordering Defendant to pay punitive damages to Plaintiff to serve as a deterrent as determined by the Court.

I.    Awarding Plaintiff the costs incurred in the prosecution of this lawsuit.


J.    Granting all such other relief as the Court deems just, fair and equitable.

Dated 3/19/07

By _____

Franklin I. Ogele, Esq.
NY Attorney Registration Number 2364974
Attorney for Plaintiff
One Gateway Center, Suite 2600
Newark, NJ 07102
Phone: 973 645 0565
Fax:  973 923 7890
Cell: 973 277 4239

**EXHIBIT 1**



Is Administaff Right for Your C

We provide HR outsourcing strategies to
companies with 10 to 2,000 employees
increased growth and productivity.

▶ Take our Company F

▶ Watch presentation

**Home**        **About HR Outsourcing**        **Our Services**        **Case Studies**        **Company Information**        C

» Why Outsourcing Works

» What is a PEO?

» HR Tips From Our CEO

» Free White Papers

» FAQs

» Free Monthly Newsletter

**Free White Papers**
Relevant
information on
HR issues and
real-world
solutions.
» Learn more...



## What is a PEO?

A Professional Employer Organization
(PEO), is not a temp firm, a staffing agency,
a simple payroll service or placement
agency.

A PEO serves as an offsite HR department,
providing:

- Employment administration relief
- Quality employee benefits
- Employer liability management services
- Productivity improvement resources

### The Co-Employment Relationship

Your company enters into an agreement
with the PEO to establish a three-way
relationship between you, your employees
and the PEO. You and the PEO become co-
employers, instead of the traditional
employer company/employee relationship.



**Sample Our HF**

HR PowerHouse
taste of the assi
receive with Adr
HR services.

» L

**Brochures**

Why Administaf
Right Move (pdf

Move Ahead Wi
Administaff (pdf



Arnold Palmer
Television Car

» V

This allows the PEO to provide you with employment administration relief and to transfer or share many <u>employer liabilities</u> via our employer liability management services. Our PEO services allow you to systematically and strategically enhance the total quality of your organization, which results in greater efficiency and productivity.

The PEO takes responsibility for HR administration and compliance, for which it charges a service fee. Your employees continue to work at your company location, and you continue to exercise control over your business.

**Focus on Growing Your Business**
You may find that you actually gain more control over your company, because you're freed from <u>administrative issues and details</u>. You can focus on doing what you do best—growing your business—and you will be accessing <u>quality employee benefits</u> that motivate and increase employee loyalty and help you retain your top performers.

Administaff provides PEO services through its <u>Personnel Management System</u>℠, which is designed to help increase your company's productivity and profitability. Utilize our Personnel Management System to help drive your revenue generation, protect your net profits and minimize your employer risks, and to help control your employer-related expenses.
» Read more...

Was this page helpful to you?

○             ○             ○             ○             ○
not helpful                                    very helpful

Submit

**Small business is good for America. Administaff is good for small business.**℠